JAY V. SURGENT, ESQ.
WEINER LESNIAK, LLP
629 PARSIPPANY ROAD
P.O. BOX 0438
PARSIPPANY, NEW JERSEY 07054
TEL: (973) 403-1100
FAX: (973) 403-0010
E-MAIL: jsurgent@weinerlesniak.com
Attorney for Petitioner-Movant Anthony DeLuca

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(Underlying Criminal No. 14-660-SRC)

| | |
|---|---|
| ANTHONY DELUCA, : | CIVIL ACTION NO. _____ |
| Petitioner-Movant, : | PETITION/MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE |
| v. : | BY PERSON IN FEDERAL CUSTODY |
| UNITED STATES OF AMERICA, : | Sat at Sentencing: Hon. Stanley R. Chesler, U.S.D.J. |

MOTION

Anthony DeLuca (Prisoner Register No.: 67002-050, presently confined at FCI Fort Dix, Joint Base MDL, New Jersey, by way of motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255, says.

1.(a) The judgment being challenged was entered in the United States District Court for the District of New Jersey.

1.(b) The case number is 2:14-CR-660(SRC).

2.(a) The judgment was filed on April 29, 2015. (Judgment

1

annexed at A[1]43-48).

2.(b) The date of sentencing was April 29, 2015.

3. The sentence imposed was 12 months and 1 day. (A44).

4. The petitioner pleaded guilty to count 1 of an Information charging Acceptance of Bribes – Racketeering, contrary to 18 U.S.C. 1952(a)(3) and 18 U.S.C. 2 (A1 to A7).

5. The petitioner pleaded guilty on November 17, 2014. See the "Application for Permission to Enter Plea of Guilty" dated November 17, 2014 (A8 to A15) and the "Plea Agreement with Anthony DeLuca" dated July 21, 2014. (A16 to 24).

6. The petitioner did not appeal his sentence.

7. The petitioner did file a Motion to Reduce his Sentence on November 13, 2015, which was withdrawn on November 20, 2015.

8. The following is the basis for the petitioner's application:

GROUND ONE: THE PETITIONER DELUCA'S SENTENCE SHOULD BE VACATED AND CORRECTED DUE TO SENTENCING COUNSEL'S INEFFECTIVNESS IN VIOLATION OF PETITIONER'S SIXTH AMENDMENT RIGHT TO EFFECTIVE COUNSEL; PETITIONER SHOULD BE RE-SENTENCED TO TIME SERVED AS HIS SENTENCE IS DISPARATE AMONG (AND EXCESSIVE TO) DEFENDANTS WITH SIMILAR RECORDS WHO HAVE BEEN SENTENCED FOR SIMILAR CONDUCT

At sentencing on April 29, 2015 before the Honorable Stanley R. Chesler, U.S.D.J., Dr. DeLuca moved for "a

---

[1] "A" denotes appendix filed separately.

substantial variance." (ST5-18; A29). Per the Presentence Investigation Report (PSR), Dr. DeLuca had a total offense level of 15 (¶94), with no prior juvenile adjudications (¶95) and no criminal history (¶96), and he faced "a guideline sentencing range of 18 to 24 months." ($ST^2$12-8 to 11; A36).

At sentencing DeLuca's good acts were discussed, and numerous letter were submitted on his behalf. (ST5-22 to 6-21; A29 to 30). In addition, Dr. DeLuca cooperated with the government: "but not only did he just agree to cooperate with the government, he actually involved himself in proactive cooperation." (ST6-24 to 7-1; A30 to 31). There are also "extraordinary family circumstances as a result of" Hurricane Sandy, which resulted in the DeLuca family losing their family home. (ST8-6 to 10; A32). Dr. DeLuca and his family have been financially devastated. The case has also taken a toll on Dr. DeLuca's children, one of whom suffers medically from gastro-intestinal bleed due to stress-induced colitis.

Dr. DeLuca received only "$1500 in cash for a period of ten months." (ST8-20 to 21; A32).

---

[2] "ST" denotes sentencing transcript of April 29, 2015; annexed to the Appendix at A25 to A42).

Dr. DeLuca is currently suspended by the Medical Board and, per a letter from the Medicaid Fraud Division dated November 16, 2015, has been debarred from participation in any Medicaid, Pharmaceutical Assistance to the Aged and Disabled (PAAD) and Senior Gold Discount and any other program administered by the Division of Medical Assistance and Health Services (DMAHS) for a period of five years. He will also, in all likelihood, be debarred by Medicare along with other insurance companies. (ST8-22 to 9-2: A32-33).

As stated at the sentencing by defense counsel, "it wasn't Dr. DeLuca who went out and sought this opportunity. It was his partner through his relationship with the individual who worked for BLS that brought this relationship and, basically, for lack of better word, it fell into Dr. Deluca's lap." (ST7-13 to 18; A31).

The government conceded that "specific deterrence is not really in play. What we have here is a need for general deterrence." (ST11-7 to 11; A35).

The government incorrectly cited the case of Dr. Aponte as "probably the closest metric to Dr. Deluca. He accepted bribes for six months, received $18,000 cash, generated $175,000 in revenue and was sentenced to 24 months, which was the bottom of his guidelines range." (ST11-15 to 19; A35). As will be shown

4

in this petition, there were numerous similarly situated doctors who received far lesser sentences than Dr. DeLuca. Indeed, Dr. Deluca's own partner (Dr. John Vitali), who brought Dr. DeLuca into the scheme, was sentenced by Judge Chesler to one year of probation with 10 months of house arrest (Location Monitoring Program) (A67).

Even the government admitted that "Dr. Deluca, as defense counsel has pointed out, has done something different than Dr. Aponte did. Dr. Deluca made a sincere good-faith effort to cooperate, which, as the court is aware, ultimately did not result in the making of a 5K motion, but it is of note, it is something of value and the government, as you know, has asked the court to take that into account in imposing sentence." (ST11-20 to 12-1; A35 to 36). Dr. DeLuca's cooperation yielded exposure of another lab. Yet it was Dr. Vitali (Dr. DeLuca's former partner) who received the 5K1.1 letter (instead of Dr. DeLuca).

The government, noting the "attempted . . . cooperation" sought a sentence below the guideline range: "What the value of that good faith and failed attempted (sic) at cooperation should be is not a particularly easy thing to put a number on. The government has made an attempt to do so and is asking the court to impose a sentence of one year and one day in this case."

(ST12-2 to 6; A36).

Judge Chesler stated:

> . . . the government has made a recommendation, which is that I go below the guideline range because even though your cooperation did not – efforts to cooperate did not result in any benefit to the government, that it reflected a sincere heart-felt desire to make amends for what you did and to try to stop it from happening again with others, and the Court recognizes that, indeed, the government's recognition of that is appropriate. But I think the government also in their recommendation has made the right calculation. (ST15-3 to 12; A39).

Judge Chesler then sentenced Dr. DeLuca to "a term of 12 months and one day." (ST16-4 to 7; A40). Forfeiture in the amount of $16,500 was imposed (ST17-22 to 18-2; A41 to 42). The forfeiture has been satisfied. (A49).

Dr. DeLuca surrendered on June 11, 2015 (A51) to begin his sentence. He is presently serving that sentence at FCI Fort Dix, Joint Base MDL, New Jersey, with a projected release date of May 8, 2016. (A52).

Petitioner submits that sentencing counsel was ineffective for failing to raise properly all facts and legal arguments, including the disparity argument of individuals in similar positions (particularly his former partner Dr. John Vitali and other physicians who were sentenced prior to Dr. DeLuca but

6

received lesser terms) who had been sentenced in the same case to either probation or shorter terms of imprisonment.

The best evidence that Dr. DeLuca's sentencing counsel was ineffective is that Dr. DeLuca's medical practice partner, Dr. John Vitale (a man who admittedly brought DeLuca into the scheme, and who also received more money in illegal payments than Dr. DeLuca), was sentenced by Judge Chesler to one year of probation (with 10 months of home confinement) for his plea to the identical charge as in DeLuca: Racketeering-Transporting in Aid of Travel Act – Commercial Bribery, contrary to 18:1952(a)(3) and 18:2 (A66).

Indeed, it should be stated at this point that the amount that Dr. DeLuca received ("$1,500 in cash for a period of ten months" [i.e., $15,000]; ST8-21; A32) is certainly one of the lowest amounts of all the doctor defendants (see chart in NorthJersey.com article dated May 25, 2015 captioned: "N.J. medical brief scheme reached grand scale" at A55-57; the amount is stated as "16,500" in this article annexed at A56).

Dr. Vitali received a sentence imposed by Judge Chesler of one year probation/10 months' home confinement on June 18, 2015—-less than two months after Dr. DeLuca received a sentence of one year and a day (see Vitali Judgment of Conviction at A66 to 71).

7

While at sentencing the government cited the case of Dr. Dennis Aponte as "probably the closest metric to Dr. DeLuca" (he accepted bribes for six months, received $18,000 cash, generated $175,000 in revenue and was sentenced to 24 months (ST11-15 to 19; A35), in actuality, even at that time, there were several other cases much more similar to Dr. DeLuca's. Dennis Aponte, who pleaded guilty to Racketeering Transporting in Aid of-Use of Facility In Interstate Commerce in aid of Commercial Bribery (the identical offense that Dr. DeLuca pled guilty to, although Dr. DeLuca's JOC states the offense is "Acceptance of Bribes-Racketeering"; contrary to 18:1952(a)(3) and 18.2) was sentenced by Judge Chesler on July 7, 2014 to 24 months in prison. (Aponte Judgment of Conviction at A58 to 64). As stated in a NJ.com article dated July 7, 2014 captioned "Cedar Grove doctor gets two years in prison for role in $100 million bribery scheme", Aponte accepted $3,000 per month from Biodiagnostic Laboratory Services (BLS) totaling $235,000. (A65). The Aponte case is far different from DeLuca; not only did Dr. DeLuca receive a far smaller amount of money but DeLuca also cooperated.

Petitioner submits that sentencing counsel was ineffective for failing to dispute the government's claim that the Aponte case was "probably the closest metric to Dr. DeLuca." In fact,

8

there were many other cases involving defendants similarly situated to Dr. DeLuca who received either probation or far lesser terms of imprisonment than Dr. DeLuca.

Effective representation would have revealed that there were several cases/sentencings which occurred prior to the sentencing in DeLuca that are more closely aligned to the DeLuca facts in which the doctors involved received far lesser and disparate sentences. Dr. Claudio Dicovsky, aged 52 (who pleaded guilty to the same offense as Dr. DeLuca) was sentenced by Judge Chesler on January 5, 2015 to a term of three years of probation. (Dicovsky Judgment of Conviction at A73 to 77). According to the FBI's Press Release "North Jersey Doctor Sentenced to One Year of House Arrest and Three Years' Probation" dated January 5, 2015 (A78), "Dicovsky received more than $224,000 in bribe payments from BLS, and BLS made more than $800,000 through testing." (A78). See also NJ.com article dated January 5, 2015 "Paterson doctor sentenced in blood lab scheme, admits $200,000 in bribes, feds say" (A79).

Again, this is a far greater amount of monies than Dr. DeLuca received.

Dr. Chirag Patel was sentenced on December 14, 2014, by Judge Claire C. Cecchi following his plea to "Anti-Kickback Violation" (42:1320a-7b(b)(1)) to one year of probation. (Patel

9

Judgment of Conviction at A80 to 85). Dr. Chirag Patel received only one year of probation in spite of the fact that the amount involved $89,180. (A85).

Dr. John Green (a gastroenterology and internal medicine doctor; A92) pleaded guilty to Anti-Kickback Violation and was sentenced on October 22, 2014 by Judge Cecchi to a probationary term of 2 years. (Green Judgment of Conviction at A86 to 91). As stated in the Star-Ledger article dated December 5, 2013, Dr. Green pleaded guilty to receiving illegal kickbacks; yet he was given a probationary term and spared prison. (A92).

Dr. Rameshcha Kania was sentenced by Judge Cecchi on June 26, 2013, to a term of 3 months in prison following his plea to "Anti-Kickback Violation" (42:1320a-7b(b)(1)) (Kania Judgment of Conviction at A99-105).

Dr. Lucio Cardoso was sentenced by Judge Cecchi on June 26, 2013, to a term of imprisonment of 4 months following his plea to "Anti-Kickback Violation" (Cardoso Judgment of Conviction as A153-159).

Dr. Daisy Deguzman was sentenced by Judge Cecchi on February 25, 2013, to a term of imprisonment of 6 months following her plea to "Anti-Kickback Statute" (Deguzman Judgment of Conviction at A135 to 141). Per a United States Attorney's Office Press Release dated January 31, 2013, Dr. Deguzman was

also ordered to forfeit $23,595. (A142-144). It should be noted that a Law360 article dated July 11, 2013 (annexed at A106-107), states that Dr. Kania also received 3 months of home confinement; Dr. Cardoso also received 4 months of home confinement; and Dr. Deguzman also received 6 months of home confinement.

Dr. Mahesh Patel was sentenced by Judge Cecchi on May 20, 2014, to a term of imprisonment of 5 months following his plea to "Anti-Kickback Violation." (Mahesh Patel Judgment of Conviction at A108 to 115). Dr. Mahesh Patel was a doctor practicing internal medicine in Orange, New Jersey. (See US Attorney's Press Release dated May 16, 2014 at A115-116).

Dr. Dov Rand was sentenced by Judge Cecchi on February 26, 2013, to a term of imprisonment of 5 months for "Anti-Kickback Violation" (Rand Judgment of Conviction at A117 to 123). See NorthJersey.com article dated February 13, 2013 "Franklin Lakes doctor sentenced in kickback scheme" which states that Dr. Rand received five months in federal prison and 5 months of home confinement. (A124).

Dr. Padma Siripurapu was sentenced by Judge Cecchi on October 30, 2013, to a term of imprisonment of 6 months. (Siripurapu Judgment of Conviction at A125 to 131). See NJToday.net article dated October 25, 2013, which states that

11

Dr. Siripurapu, who practiced internal medicine, received six months of prison to be followed by five months of home confinement for receiving more than $50,000 in illegal cash kickbacks. (A132 to 134).

Dr. Yash Khanna was sentenced by Judge Cecchi on March 31, 2015, to a term of imprisonment of 9 months following his pleas to 6 counts including Conspiracy, Acts Involving Federal Health Care Programs, and Willful Failure to File Return/Information (Khanna Judgment of Conviction at A144-150). As stated in The American Bazaar article dated March 25, 2015 (A151 to 152), Dr. Khanna not only took kickbacks for diagnostic testing referrals but failed to file tax returns on $1 million of income over a three-year period. (A151).

All of these doctors were involved in conduct similar to petitioner DeLuca except that most of these doctors took far greater amounts in bribe money than DeLuca. Yet each of these doctors received lesser sentences.

Dr. DeLuca's sentencing counsel should have brought up the above cited cases in his Sentencing Memo to the Court.

In addition to Dr. DeLuca's former partner Dr. Vitali (who was the originator of the scheme who brought Dr. DeLuca into the plan) receiving a probationary term (with house arrest), Dr. Paul Ostergaard was also sentenced by Judge Chesler on May 13,

12

2015 (less than one month after Dr. DeLuca's sentence) to a one year probationary term (Dr. Ostergaard pleaded to the same statute as DeLuca). See DeLuca Judgment of Conviction (A93 to 97) and NorthJersey.com article dated May 11, 2015: "Morris County doctor spared prison term in bribery scheme." (Da98). As stated in this article, Dr. Ostergaard "admitted pocketing more than $50,000 in bribes." (A98).

The following is a chart which shows sentences of doctors convicted of illegal kickbacks all prior to the defendant DeLuca's sentencing in which the doctors all received lesser sentences than Dr. DeLuca's one-year-and-a-day sentence:

| DEFENDANT | JUDGE | SENTENCE DATE | AMOUNT | SENTENCE |
|---|---|---|---|---|
| 1) Dr. Claudio Dicovsky | Chesler | 1/5/15 | $224,000 | 3 years probation |
| 2) Dr. Chiraq Patel | Cecchi | 12/14/14 | $89,180 | 1 year probation |
| 3) Dr. John Green | Cecchi | 10/22/14 | At least $14,000 | 2 years probation |
| 4) Dr. Rameschcha Kania | Cecchi | 6/26/13 | $4,880 | 3 months prison |
| 5) Dr. Lucio Cardoso | Cecchi | 6/26/13 | $3,075 | 4 months prison |
| 6) Dr. Daisy Deguzman | Cecchi | 2/25/13 | $23,595 | 6 months prison |
| 7) Dr. Mahesh Patel | Cecchi | 5/20/14 | $6,600 | 5 months prison |
| 8) Dr. Dov Rand | Cecchi | 2/26/13 | More than $5,600 | 5 months prison |
| 9) Dr. Padma Siripurapu | Cecchi | 10/30/13 | More than $50,000 | 6 months prison |
| 10) Dr. Yash Khanna | Cecchi | 3/31/15 | Numerous Counts | 9 months prison |

Following the petitioner DeLuca's sentencing, the following doctors were both sentenced by Judge Chesler to less time than the petitioner DeLuca.

| DEFENDANT | DATE OF SENTENCE | AMOUNT | SENTENCE |
|---|---|---|---|
| 1) Dr. Paul Ostergaard | 5/13/15 | More than $50,000 | 1 year probation |
| 2) Dr. John Vitale | 6/18/15 | $33,000 (joint) | 1 year probation (10 month's house arrest) |

13

Again, Dr. John Vitale was DeLuca's partner who brought the scheme to Dr. DeLuca. In spite of the fact that Dr. DeLuca also cooperated with the authorities, Dr. Vitale received a 1 year probationary term while Dr. DeLuca received a one year and a day prison term.

Dr. DeLuca has pointed to a dozen doctors who were convicted of the same offense as in DeLuca, with most pleading guilty to receiving illegal amounts greater than Dr. DeLuca, all of whom received lower sentences. In fact, in five of these cases the doctors received straight probation.

9. As stated above, sentencing counsel did not properly raise the disparity of sentence/excessive sentence arguments to the sentencing judge. The ineffective assistance of counsel at sentencing argument has not been raised previously in any court.

10. Petitioner does not have any motion, petition or appeal now pending in any court judgment/sentence he is challenging.

11. The petition was represented by the following attorneys:

(a) At the preliminary hearing, arraignment, plea and sentencing: Patrick J. Egan, Esq., Fox Rothschild, LLP, 2000 Market Street, 20th Floor, Philadelphia PA 101-3-3222.

(b) At the Motion for Reconsideration of Sentence

14

(withdrawn): Jay V. Surgent, Esq.; Weiner Lesniak, LLP, 629 Parsippany Road, P.O. Box 0438, Parsippany, New Jersey 07054.

12. The petitioner was sentenced on one count of an Information.

13. The petitioner does not have any future sentence to serve after he completes the sentence imposed by the judgment under attack.

Therefore, movant asks that the Court grant the following relief: vacate the sentence and resentence the petitioner to time already served, or modify the sentence to allow him to serve the remainder of his sentence under the ankle monitoring program or, in the alternative, under home confinement.

_____
Jay V. Surgent, Esq

I declare under penalty of perjury that the foregoing is true and correct.

_____
Anthony DeLuca